**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**SPECIALTY RENTAL TOOLS & SUPPLY, L.P.**                                                **PLAINTIFF**

**VERSUS**                                                                  **CIVIL ACTION NO. 2:07cv87KS-MTP**

**WILLIAM P. SHOEMAKER, SR.**                                                          **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion for Summary Judgment **[# 27]** filed on behalf of the defendant.  The court, having reviewed the motion, the response, the pleadings and exhibits on file, and being otherwise fully advised in the premises finds that the motion is well taken and should be granted.  The court specifically finds as follows:


**FACTUAL BACKGROUND**

From 1993 to 2002, Defendant William P. Shoemaker ("Shoemaker") owned and operated a company known as Southeastern Rentals, which was an oil field related service company that rented wireline tools.  Sometime around March of 2001, Shoemaker was approached by a representative of Southeastern Rental Tools & Supply, L.P. ("STS"), who discussed the possible sale of Southeastern Rentals to STS.  Some time passed, and in approximately November of 2001, there were further discussions regarding the sale of Southeastern Rentals to STS.  Pursuant to these discussions, Shoemaker was sent a "Letter of Intent" regarding the sale on or about

January 2, 2002.  Shoemaker took this letter to his attorney for review and response.

The letter of intent states, in part in Section 7 that, "Shoemaker's employment agreement will also include certain non-compete provisions to be triggered should he leave the employment of STS".  On January 24, 2002, Dal Williamson, Shoemaker's attorney, wrote to STS and, among other things, informed STS of Shoemaker's disagreement with the non-competition part of the proposed agreement.  STS responded by letter dated January 25, 2002 and specifically stated that, "STS will amend the non-compete agreement to extend for two years after STS is no longer compensating William Shoemaker.  If Mr. Shoemaker leaves STS employment at the end of his five-year contract, the two-year non-compete will be enforced.  Should Mr. Shoemaker terminate his employment within the five year contract period and compensation cease, the two-year non-compete will be enforced.  This is consistent with STS employment policy".

Eventually, the parties agreed to terms and, on March 1, 2002, the parties closed the sale.  As consideration for the sale of Southeastern Rentals to STS, Shoemaker was to be paid the sum of 1.5 million dollars.  One of the closing documents was a Members Interest Purchase Agreement which contained a covenant not to compete as follows:

> 9.7 <u>Covenant Not to Compete:  During the period commencing on the Date of Closing and continuing until either the second anniversary of the Date of Closing or on the second anniversary of the termination of Seller's employment by the Company, whichever occurs later, the "Non-competition Period"), the Seller shall not (and shall cause each Non-competition Party (as defined below) not to), directly or indirectly own, manage, operate or control or be employed by any business in competition with the business activities conducted by the Company on the Date of Closing or the date Seller is no longer an employee of the</u>

Company . . .

As part of the closing, the parties also executed an Employment Agreement and a separate Non-Competition Agreement.  The Non-Compete Agreement contained a paragraph which stated that "the parties hereto intend this Non-Competition Agreement to supersede any other non-compete agreements previously entered into by the parties, whether such agreements are written or orally made."

The Employment Agreement provided for a primary employment term of five years, subject to earlier termination.  On February 21, 2007, the plaintiff informed Shoemaker that his contract of employment "would not be renewed."  The plaintiff was very exact in its wording of this letter to make certain that Shoemaker's contract was not being "terminated" but only non-renewed.

According to the Complaint, immediately after his employment with STS ended, Shoemaker opened an office for Professional Wireline Rentals, LLC ("PWR"), a Louisiana company engaged in oilfield services in direct competition with STS.  The plaintiff alleges that prior to March 1, 2007, PWR had no presence or office in the state of Mississippi, but that with Shoemaker's help, PWR opened an office in Ellisville, Mississippi literally right down the road from STS's offices.  The plaintiff asserts that since that time, Shoemaker has contacted and/or hired current and former employees of STS and that he has also contacted current and former clients of STS, solicited business, and performed work for these former or current clients of STS.

On April 27, 2007, the plaintiff filed its Complaint requesting: (1) injunctive relief from the court by prohibiting Shoemaker from competing against STS; (2) actual damages it has sustained as a result of Shoemaker interfering with business or

contractual relations of STS; and (3) punitive damages; and (4) all expenses of litigation.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over

facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## ANALYSIS

The plaintiff alleges that this court has original jurisdiction of this civil action via complete diversity of the parties under 28 U.S.C. §1332(a)(1), thus Mississippi substantive law is controlling. *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78-80 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006). The first rule of contract

interpretation under the established *juris prudence* of Mississippi is that the court give effect to the intent of the parties. *See Holland v. Mayfield*, 826 So.2d 664 (Miss. 1999). Further, non-competition agreements have been viewed by the Mississippi Supreme Court as "restrictive covenants [which] are in restraint of trade and individual freedom and are not favorites of the law." *Frierson v. Sheppard Building Supply Co.*, 154 So.2d 151, 156 (1963).  The enforceability of a non-competition provision is "largely predicated upon the reasonableness and specificity of its terms." *Empiregas, Inc. of Kosciusko v. Bain*, 599 So. 2d 971, 975 (Miss. 1992).

  The defendant points out that there is an ambiguity in the non-compete clauses in the Purchase Agreement and in the separate Non-Compete Agreement.  The plaintiff even admits as much but asserts, somewhat disingenuously, that the clause in the Purchase Agreement is "dominant" and should be given effect over that contained in the separate Non-Compete Agreement.  This is argument that carries little weight as the Non-Compete Agreement signed concurrently with the Purchase Agreement states that "the parties hereto intend this Non-Competition Agreement to supersede any other non-compete agreements previously entered into by the parties, whether such agreements are written or orally made."  Thus, if either clause is viewed as dominant, the one contained in the Non-Compete Agreement would be.  Regardless, there is an admitted ambiguity between the non-compete clauses of the two documents.

   Mississippi Courts have long held that where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. *Facilities, Inc. v. Rogers Usry*

*Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005)(citing *Leach v. Tingle*, 586 So.2d 799, 801-02 (Miss. 1991)).  In *Leach*, the Mississippi Supreme Court, citing *Stampley v. Gilbert,* 332 So. 2d 61, 63 (Miss. 1976), held:

> [W]e accept that, in a case where language of an otherwise enforceable contract is subject to more than one fair reading, we will give that language the reading most favorable to the non-drafting party.

586 So. 2d at 801.

If a court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary canons of contract construction. *Pursue Energy Corporation v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990). "Ambiguous words and terms should be construed against the party who has drafted them; and we accept that, in a case where language of an otherwise enforceable contract is subject to more than one fair reading, we will give that language the reading most favorable to the non-drafting party. " *Ronald Adams Contractor, Inc. v. Mississippi Transportation Commission*, 777 So. 2d 656, 657 (Miss. 2000).

The plaintiff asserts that counsel for the defendant actually participated in the drafting of the closing documents and therefore discretionary construction unfavorable to the drafting party should not be utilized.  The evidence, however, reveals that Shoemaker's counsel only provided minimal input into the actual drafting of the Purchase Agreement and no input into the drafting of the Employment Agreement or the Non-Compete Agreement.  Indeed, the first time Shoemaker or his counsel saw the latter two documents was on the day of closing.

Under Mississippi law, reviewing the construction of contracts involves questions

of law that are committed to the court rather than the fact finder.  *Humphreys County v. Guy Jones, Jr. Construction Company, Inc.*, 910 So. 2d 1129, 1131 (Miss. 2005)*; See also Royer Homes of Mississippi, Inc. v. Chandeliur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003)(citing *Parkerson v. Smith*, 817 So. 2d 529, 532 (Miss. 2002)).  However, "where a contract is ambiguous and uncertain, questions of fact are presented which are to be resolved by the trier of facts."  *Cooper Tire & Rubber Company v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005) (Cooper I).

In the present case there is an ambiguity between the two non-compete agreements. The two agreements, in and of themselves, contain no such ambiguities and do not contain relevant questions of fact which require resolution by a separate finder of fact.  While the clause in the Purchase Agreement may be subject to more than one interpretation, this clause is not controlling given the language of the Non-Compete Agreement.  Therefore, the canons of construction, and this court's duty to decide legal issues, require the court to resolve the ambiguity in the non-compete clauses more favorably to the defendant, as the non-drafting party.

In doing so, and viewing the two clauses together, the court finds that the parties intended for Shoemaker to work for the plaintiff for a period of five years and that if he quits or was terminated during that five year period, he would be subject to the non-compete clause for two years thereafter.  However, the court finds that the parties clearly intended that once Shoemaker concluded his five year term of employment, he would no longer be prohibited from competing with the plaintiff.

As a final matter, the parties parse words over Shoemaker's ultimate dismissal from his employment.  The defendant contends that he was never "terminated"

according to the term as defined in the Employment Agreement.  The court agrees that the term was defined in the employment documents to include termination for cause but also allows for termination by either party for any reason upon fourteen days written notice.  There is no dispute that Shoemaker was not terminated for cause nor was he terminated under the fourteen day notice provision.

However, contrary to the defendant's contentions otherwise, termination also means conclusion of one's service.  The contract of employment was fulfilled and it ended, i.e., it terminated.  Noticeably, the plaintiff was very careful in its wording of the "termination" letter of February 21, 2007, by stating that Shoemaker was not being terminated, only that his contract was not being renewed.  Thus, it is clear that the plaintiff understood and appreciated the differentiation, meaning and effect of the term "termination" versus a non-renewal under the contract.  The fact that the plaintiff chose to non-renew the defendant's contract versus terminating it is further support for the court's conclusion that the parties did not intend the non-compete agreement to survive beyond the five year term of employment.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[# 27]** filed on behalf of the defendant is Granted and the plaintiff's Complaint is dismissed with prejudice and that any other pending motions are denied as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this 18th day of December, 2007.

_____
*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE